IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:09-CV-384-D

| | |
|---|---|
| DAVID W. COX, and ) | |
| FREDRIKA V. COX, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| PARKSTONE PROPERTIES LLC, ) | |
| JEFFREY W. AKIN, ) | |
| DUNHILL LLC, and FDIC as ) | |
| receiver for MAGNETBANK, ) | |
| ) | |
| Defendants. ) | |

David W. Cox and Fredrika V. Cox ("plaintiffs"), both Florida residents, filed this action against Parkstone Properties LLC ("Parkstone"), Jeffrey W. Akin, Dunhill LLC, and MagnetBank [D.E 1] and invoke the court's diversity jurisdiction. Id. ¶ 6. On January 19, 2010, the Federal Deposit Insurance Corporation ("FDIC"), as receiver for MagnetBank, was substituted as a party in place of MagnetBank [D.E. 28]. On February 10, 2010, the FDIC moved to dismiss plaintiffs' claims against it for lack of subject-matter jurisdiction [D.E. 37]. As explained below, the court lacks subject-matter jurisdiction over the claims against the FDIC and grants the FDIC's motion to dismiss.

I.

On July 31, 2006, plaintiffs contracted to sell to Parkstone a 28.661 acre parcel of land (the "property") in Wake County, which included plaintiffs' residence. See Compl. 1, ¶ 8. Under the terms of the contract, plaintiffs retained the right to reacquire title to their residence, the lot on which their residence sits, and another lot of their choosing. Id. ¶¶ 8, 12. Moreover, these rights survived closing on the property. Id. Akin, the sole member and manager of Parkstone, signed the contract

to guarantee Parkstone's performance. Id. ¶¶ 3, 10. Under the terms of the contract, the parties also anticipated executing and recording a "Memorandum of Contract" at the time of closing. Id. ¶ 11.

On October 23, 2006, Dunhill, a North Carolina limited liability company, was formed to develop the property. Id. ¶¶ 4, 13. Dunhill sought and received a loan from MagnetBank, a Utah banking corporation, to finance the acquisition and development of the property. Id. ¶¶ 5, 14–16. On November 21, 2006, Parkstone assigned its right to purchase the property to Dunhill. Id. ¶ 17.

On November 30, 2006, plaintiffs and Dunhill closed on the property. Id. ¶ 18. As part of the closing, MagnetBank provided a $4,537,500 loan to Dunhill. Id. At closing, plaintiffs signed a "Memorandum of Contract" that described plaintiffs' right to reacquire title to their residence, the lot on which it sits, and another lot of their choosing. Id. Plaintiffs allege that Dunhill failed to execute the "Memorandum of Contract" when the parties closed, when Dunhill recorded the deed to the property, and when Dunhill re-recorded the deed. See id. ¶¶ 19, 22–24.

On February 21, 2008, MagnetBank foreclosed on the property. See id. ¶ 26. On June 27, 2008, MagnetBank purchased the property for $2,800,000. Id. ¶ 27. On July 2, 2008, plaintiffs filed suit in Wake County Superior Court seeking to enjoin MagnetBank's foreclosure and requesting a determination of plaintiffs' rights in the property. Id. ¶ 28. On August 27, 2008, plaintiffs voluntarily dismissed their state court action. Id. ¶ 30.

On January 30, 2009, the Commissioner of Financial Institutions of the State of Utah took possession of MagnetBank. See id. ¶ 5; Mot. Dismiss Ex. 2 (In re MagnetBank, No. 090901576, slip. op. at 3 (Utah Dist. Ct. Jan. 30, 2009) (order approving possession)). The Commissioner appointed the FDIC as the receiver of MagnetBank. See Mot. Dismiss Ex. 3 (In re MagnetBank, No. 090901576 (Utah Dist. Ct. Jan. 30, 2009) (notice of filing of certificate of appointment of FDIC as receiver, attaching certificate of appointment and letter accepting appointment)).

On August 27, 2009, plaintiffs filed suit in this court against Parkstone, Akin, Dunhill, and MagnetBank [D.E. 1]. Plaintiffs allege several claims including: (1) two claims of breach of

2

contract against Parkstone, Akin, and Dunhill, id. ¶¶ 31–39, (2) negligence against all defendants, id. ¶¶ 40–43, (3) breach of fiduciary duty against all defendants, id. ¶¶ 44–47, (4) conversion against all defendants, id. ¶¶ 48–49, (5) two unjust enrichment claims against all defendants, id. ¶¶ 50–54, and (6) violation of the North Carolina Unfair and Deceptive Trade Practices Act against all defendants, id. ¶¶ 56–58. Plaintiffs seek damages, an "equitable lien or constructive trust" to "preserv[e] . . . [p]laintiffs' rights," a "declaration that the [p]roperty be conveyed and hereafter transferred" to plaintiffs, treble damages, attorney's fees, and costs. Id. at 11 (Prayer for Relief); see id. ¶ 55.

On January 19, 2010, the FDIC, as receiver for MagnetBank, was substituted as a party in place of MagnetBank [D.E. 28]. On February 10, 2010, the FDIC moved to dismiss plaintiffs' claims against it pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure for lack of subject-matter jurisdiction and for failure to state a claim [D.E. 37]. Plaintiffs responded in opposition [D.E. 68] and the FDIC replied [D.E. 77].

II.

A motion to dismiss under Rule 12(b)(1) tests subject-matter jurisdiction, which is the court's "statutory or constitutional power to adjudicate the case." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998) (emphasis omitted). A federal court "must determine that it has subject-matter jurisdiction over [a claim] before it can pass on the merits of that [claim]." Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 479–80 (4th Cir. 2005). Plaintiffs, as the parties asserting that this court has subject-matter jurisdiction, must prove that subject-matter jurisdiction exists. See, e.g., Steel Co., 523 U.S. at 104; Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999); Richmond, Fredericksburg & Potomac R.R. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). In considering a motion to dismiss for lack of subject-matter jurisdiction, the court may consider evidence outside of the pleadings without converting the motion into one for summary judgment. Evans, 166 F.3d at 647.

The FDIC contends that 12 U.S.C. § 1821(d)(13)(D) divests this court of subject-matter jurisdiction. Mem. Supp. Mot. Dismiss ("Mem. Supp.") 2–4. Section 1821(d) sets forth the administrative procedure under the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA") whereby the FDIC, as a receiver for an insolvent institution, handles claims. See, e.g., Elmco Props. v. Second Nat'l Fed. Sav. Ass'n, 94 F.3d 914, 919 (4th Cir. 1996); Tillman v. Resolution Trust Corp., 37 F.3d 1032, 1035 (4th Cir. 1994); Brady Dev. Co. v. Resolution Trust Corp., 14 F.3d 998, 1003 (4th Cir. 1994). Upon its appointment as receiver, the FDIC is required to publish notice to the failed institution's creditors that they must file claims with the FDIC by a certain date not less than 90 days after the date of the publication. 12 U.S.C. § 1821(d)(3)(B). The FDIC is also required to mail notice to all known creditors of the failed institution. Id. § 1821(d)(3)(C). After a claimant submits a claim to the FDIC, the FDIC has 180 days from the date of filing to allow or disallow the claim. Id. § 1821(d)(5)(A)(i). Claimants have 60 days from the date of disallowance, or from expiration of the 180-day administrative-decision deadline, to seek judicial review. Id. §1821(d)(6)(A). To enforce this administrative process, section 1821(d)(13)(D) provides:

> Except as otherwise provided in this subsection, no court shall have jurisdiction over—
>
> (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or
>
> (ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

12 U.S.C. § 1821(d)(13)(D).

Section 1821(d)(13)(D), when combined with section 1821(d)(6)(A), operates to require the exhaustion of the FDIC's administrative remedies as a prerequisite to jurisdiction in a district court. See, e.g., Elmco Props., 94 F.3d at 919; Tillman, 37 F.3d at 1035; Brady Dev. Co., 14 F.3d at 1003;

4

see also Village of Oakwood v. State Bank & Trust Co., 539 F.3d 373, 385–86 (6th Cir. 2008) (collecting cases). Plaintiffs concede that they did not did present their claims to the FDIC, but contend that the court has jurisdiction over their claims against the FDIC. See Mem. Opp'n Mot. Dismiss ("Mem. Opp'n") 5–7, 10.

Initially, plaintiffs contend that the court has jurisdiction because 12 U.S.C. § 1823(c)(4)(A) precludes administrative review by the FDIC. See Mem. Opp'n 5–6. Specifically, plaintiffs contend that a district court lacks jurisdiction only when the FDIC makes the findings required in section 1823(c)(4)(A), and the FDIC has not made these findings. See id.

Plaintiffs misread the statutes at issue. Section 1823(c)(4)(A) provides that "[n]otwithstanding any other provision of this chapter, the Corporation may not exercise any authority under this subsection or subsection (d), (f), (h), (i), or (k) of this section with respect to any insured depository institution unless" the FDIC makes various findings and certain conditions (not applicable here) are met. 12 U.S.C. § 1823(c)(4)(A). Section 1823(c)(4)(A) directs the FDIC to select the method which is least costly to the deposit insurance fund in resolving a bank failure. See id.; Buck v. FDIC, 75 F.3d 1285, 1287 (8th Cir. 1996); Texas Am. Bancshares, Inc. v. Clarke, 954 F.2d 329, 333 (5th Cir. 1992). Section 1823(c)(4)(A) does not address the administrative-review scheme in section 1821(d). Accordingly, plaintiffs' section 1823(c)(4)(A) argument fails.

Next, plaintiffs contend that they were not required to exhaust their administrative remedies because they did not receive proper notice that the FDIC was appointed as MagnetBank's receiver during the time period within which claims were to be filed. See Mem. Opp'n 6–7. Section 1821(d)(5)(C) requires the FDIC to disallow claims not timely filed. See 12 U.S.C. § 1821(d)(5)(C)(i). However, the FDIC may consider a time-barred claim "if . . . the claimant did not receive notice of the appointment of the receiver in time to file [a] claim." Id. 1821(d)(5)(C)(ii). Therefore, "the only consequence [of improper notice] is that the FDIC 'may' consider a late-filed claim." Freeman v. FDIC, 56 F.3d 1394, 1402 (D.C. Cir. 1995) (quoting 12 U.S.C. §

5

1821(d)(5)(C)(ii)); see, e.g., Elmco Props., 94 F.3d at 919 n.3. Thus, section 1821(d)(5)(C)(ii) does not help plaintiffs or vest a court with jurisdiction. Rather, it provides an exception to the administrative-filing time requirements and actually supports the conclusion that plaintiffs must file an administrative claim. See, e.g., Elmco Props., 94 F.3d at 919 n.3; Freeman, 56 F.3d at 1402. Accordingly, even if the FDIC did not properly notify plaintiffs that it was MagnetBank's receiver, the court does not thereby obtain subject-matter jurisdiction.

Next, plaintiffs argue that the court has the equitable power to excuse FIRREA's exhaustion requirements. See Mem. Opp'n 10. According to plaintiffs, such a judicially crafted exemption from the statutory requirements is warranted because the "FDIC has had ample time to consider the claim," "any further delay . . . would be unreasonable," and the FDIC's motion to dismiss demonstrates that it is "predispos[ed] to deny [p]laintiffs' claims." Id. In support, plaintiffs cite Iddir v. INS, 301 F.3d 492 (7th Cir. 2002). In Iddir the Seventh Circuit described four exceptions to the exhaustion requirement under the Immigration and Nationality Act:

> (1) requiring exhaustion of administrative remedies causes prejudice, due to unreasonable delay or an indefinite timeframe for administrative action; (2) the agency lacks the ability or competence to resolve the issue or grant the relief requested; (3) appealing through the administrative process would be futile because the agency is biased or has predetermined the issue; or (4) where substantial constitutional questions are raised.

Iddir, 301 F.3d at 498 (quotation omitted).

Iddir was decided under the Immigration and Nationality Act, not FIRREA. Thus, it provides no comfort to plaintiff. Moreover, plaintiffs cannot rely on a judicially crafted futility exception in this case. When, as here, exhaustion is a "statutorily specified jurisdictional prerequisite," exhaustion "may not be dispensed with merely by a judicial conclusion of futility." Weinberger v. Salfi, 422 U.S. 749, 766 (1975); see FDIC v. Shain, Schaffer & Rafanello, 944 F.2d 129, 136 (3d Cir. 1991). Notably, the Fourth Circuit has described FIRREA's administrative scheme as "an absolute and unwaivable jurisdictional requirement." Brady Dev. Co., 14 F.3d at

6

1007 (quotation omitted); see Tillman, 37 F.3d at 1036. Thus, the court rejects plaintiffs' equitable-power argument.

III.

Accordingly, the court GRANTS the FDIC's motion to dismiss the claims against the FDIC for lack of subject-matter jurisdiction [D.E. 37].

SO ORDERED. This 5 day of August 2010.

JAMES C. DEVER III
United States District Judge

7

Case 5:09-cv-00384-D   Document 84   Filed 08/05/10   Page 7 of 7